**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

LINDA SPANIER and OWEN SPANIER,

Plaintiffs,

vs.

AMERICAN POP CORN COMPANY, CONAGRA FOODS, INC., GENERAL MILLS, INC., GIVAUDAN FLAVORS CORPORATION, SENSIENT FLAVORS L.L.C., SYMRISE INC., CHR. HANSEN, INC., FIRMENICH INC., and JOHN DOES 1-20.

Defendants.

No. C15-4071-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS**

_____

**TABLE OF CONTENTS**

I.  *INTRODUCTION AND BACKGROUND* ..................................................... **2**
    A.  *Procedural Background* ......................................................................... **2**
    B.  *Factual Background* .............................................................................. **3**

II. *LEGAL ANALYSIS* ............................................................................... **4**
    A.  *Personal Jurisdiction* ........................................................................... **4**
        1.  *Rule 12(b)(2) standards* .............................................................. **4**
        2.  *Personal jurisdiction based on consent or waiver* .................... **8**
        3.  *Rule 12(b)(2) analysis* ................................................................ **10**
            a.  *General personal jurisdiction* ........................................... **11**
            b.  *Specific personal jurisdiction* ........................................... **15**
                i.   *The nature, quality, and quantity of the contacts* ................................................................. **16**
                ii.  *The "secondary factors": Iowa's interest in pAroviding a forum and convenience of the parties* ........................................ **18**
                iii. *Conclusion* ............................................................... **19**
    B.  *Venue* ................................................................................................... **20**
        1.  *Rule 12(b)(3) standards* .............................................................. **20**

    **2.**  **Venue analysis**............................................................**22**
      *a.*  *General venue statute*.........................................**22**
      *b.*  *Venue in this case*...............................................**23**
  **C.** **Indispensible Parties** .............................................**25**
    **1.**  **Standards for 12(b)(7) motion** ......................................**25**
    **2.**  **Rule 19 analysis**................................................**28**
**III.** **CONCLUSION** ...............................................................**28**

In this diversity action under Iowa products liability law, plaintiffs allege that Linda Spanier developed "popcorn lung" by consuming multiple bags of microwave popcorn daily for several years. Presently, the merits of the plaintiffs' claims are not before me. Rather, I must resolve, *inter alia*, whether the plaintiffs have made a *prima facie* showing that four of the named corporate defendants had sufficient minimum contacts with Iowa to satisfy the exercise of specific or general personal jurisdiction. In addition, I must determine whether venue is proper in this district and whether the plaintiffs have failed to name an indispensible party to this litigation.

## I. INTRODUCTION AND BACKGROUND
### A. Procedural Background

On August 31, 2015, plaintiffs Linda Spanier and Owen Spanier ("the Spaniers") filed their Complaint against defendants, all manufacturers of microwave popcorn or popcorn butter flavoring, alleging claims of strict liability, negligence, breach of implied warranties, and loss of consortium. The Spaniers' claims all stem from Linda's alleged respiratory injury resulting from her exposure to popcorn containing butter flavorings

containing diacetyl. The Complaint alleges that this court has subject matter jurisdiction by virtue of diversity of citizenship of the parties, 28 U.S.C. § 1332.

Defendants Symrise, Inc. ("Symrise"), Firmenich Inc. ("Firmenich"), Givaudan Flavors Corporation ("Givaudan"), and CHR. Hansen, Inc. ("CHR. Hansen") (collectively, "the moving defendants") have each filed motions to dismiss for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) (docket nos. 20, 24, 25, and 43). Symrise has also moved to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failing to join an indispensable party. The Spaniers have filed a response to Symrise's motion and a unified response to the other moving defendants' motions. The moving defendants have, in turn, filed timely reply briefs.

### B.    Factual Background

Because this case is before me on a motion to dismiss, and no jurisdictional discovery has been authorized or conducted, the factual background is necessarily drawn— at least in the first instance—from the factual allegations in the Spaniers' Complaint. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, however, I may also consider affidavits and exhibits presented with the motion and in opposition to it. *See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474–75 (8th Cir. 2012). Where appropriate or necessary, I have amplified the facts alleged in the Complaint with facts from such additional sources. For present purposes, the focus is on facts relevant to personal jurisdiction and venue, rather than all facts giving rise to the parties' dispute.

The Spaniers are married and residing in New York. CHR. Hansen is a Wisconsin corporation with its principal place of business outside of New York. Symrise is a New Jersey corporation with its principal place of business outside of New York. Firmenich is a Delaware corporation with its principal place of business outside of New York. Givaudan is a Delaware corporation with its principal place of business outside of New York.

Linda purchased, prepared, and consumed microwave popcorn manufactured by defendants American Pop Corn Company ("American Pop Corn"), ConAgra Foods, Inc. ("ConAgra") and General Mills, Inc. ("General Mills"). CHR. Hansen supplied butter flavoring to ConAgra for use in its Hamburg, Iowa, plant. CHR. Hansen's butter flavoring was added to ConAgra's Act II brands of microwave popcorn. CHR. Hansen has a registered agent in Iowa for the purpose of service of process, but CHR. Hansen does not have a place of business or any physical presence in Iowa.[1] Givaudan supplied butter flavoring to American Pop Corn's plant in Sioux City, Iowa, where its butter flavoring was added to American Pop Corn's Jolly Time popcorn brand. Symrise supplied butter flavoring to General Mills's plant in Iowa City, Iowa, where its butter flavoring was added to General Mills's Pop Secret popcorn brand.

## II. *LEGAL ANALYSIS*

### A. *Personal Jurisdiction*

#### 1. *Rule 12(b)(2) standards*

The moving defendants each seek dismissal of the Complaint on the ground that this court lacks personal jurisdiction over them. The Spaniers dispute that contention. Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "lack of personal jurisdiction." FED. R. CIV. P. 12(B)(6). As the Eighth Circuit Court of Appeals has explained,

> "To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen*

---

[1]CHR. Hansen has one employee who resides in Iowa. This employee is a sales representative who does not work out of a CHR. Hansen office in Iowa but, instead, works remotely from home. This sales representative is responsible for certain international and domestic sales relationships, only some of which are with Iowa customers.

> *Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)), *cert. denied*, —— U.S. ——, 131 S. Ct. 472, 178 L.Ed.2d 289 (2010). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id.* Its "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (internal quotation marks omitted).

*Dairy Farmers of Am., Inc.*, 702 F.3d at 474–75. Although I may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion, the pleader's burden, in the absence of an evidentiary hearing, is only to make a "minimal" prima facie showing of personal jurisdiction, and I "must view the evidence in the light most favorable to the [pleader] and resolve all factual conflicts in its favor in deciding whether the [pleader] has made the requisite showing." *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 581-82 (8th Cir. 2011). The Eighth Circuit Court of Appeals reviews *de novo* a district court's order granting a dismissal pursuant to Rule 12(b)(2). *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010).

The exercise of personal jurisdiction is only permissible to the extent that it is "permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994) (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). As Iowa's Supreme Court explained, when interpreting Iowa's long-arm statute, codified in Iowa Rule of Civil Procedure 1.306,[2] the statute "expands Iowa's jurisdictional reach to the

---

[2] Iowa's jurisdictional statute provides in relevant part:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal

widest due process parameters allowed by the United States Constitution." *Hammond v. Florida Asset Financing Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (citing *Hodges v. Hodges*, 572 N.W.2d 549, 552 (Iowa 1997)). Therefore, I must determine whether personal jurisdiction over each of the moving defendants comport with constitutional due process restrictions. *See Wells Dairy, Inc.*, 607 F.3d at 518; *see also Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (noting that when a long-arm statute is broadly construed, "the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"Due process requires that a defendant have certain 'minimum contacts' with the forum state for personal jurisdiction to be exercised." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)). More specifically,

> Contacts with the forum state must be sufficient that requiring a party to defend an action would not "offend traditional notions of fair play and substantial justice." [*Int'l Shoe Co.*, 326 U.S.] at 316, 66 S. Ct. 154, 90 L.Ed. 95 (internal quotation marks and citation omitted). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations omitted).
>
> We developed a five-factor test to evaluate whether a defendant's actions are sufficient to support personal

---

> representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

IOWA R. CIV. P. 1.306. "Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to the federal constitutional limits." *Wells Dairy, Inc. v. Food Movers Intern., Inc*., 566 F. Supp.2d 933, 945 n.3 (N.D. Iowa 2008).

jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [the state's] interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *See, e.g.*, *Precision Const. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 118 (8th Cir. 1985) (noting that the first three factors are of primary importance and the last two of secondary importance).

*Myers*, 689 F.3d at 911.

"Personal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978)). "The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *VGM Fin. Servs. v. Singh*, 708 F. Supp.2d 822, 830–31 (N.D. Iowa 2010) (quoting *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) in turn citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984)); *see also Dever*, 380 F.3d at 1073 ("The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction."). "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Viasystems, Inc.*, 646 F.3d at 593 (quoting *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008) in turn quoting *Bell Paper Box, Inc.*, 22 F.3d at 819). In the five-factor minimum contact analysis discussed above, "[t]he third factor distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. According to the Eighth Circuit Court of Appeals, this is so, because "[s]pecific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Id.* at 912. "Both theories of personal jurisdiction require 'some act by which

the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Both "general" and "specific" personal jurisdiction are at issue, here, because the Spaniers assert that, under both theories, this case is allowed to proceed. I will apply the standards discussed above in analyzing the moving defendants' Motions to Dismiss pursuant to Rule 12(b)(2). However, before conducting that analysis, I must first address whether Symrise and CHR. Hansen have consented to jurisdiction here by virtue of their maintaining a registered agent for service of process in Iowa.

### 2. *Personal jurisdiction based on consent or waiver*

I need not conduct a minimum contacts analysis in this case in order to determine whether Symrise and CHR. Hansen are subject to personal jurisdiction in Iowa. In addition to the minimum contacts test, the Eighth Circuit Court of Appeals has recognized consent as another means to acquire personal jurisdiction over a non-resident defendant. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1394–95 (8th Cir. 1993); *Knowlton*, 900 F.2d at 1199. As the Eighth Circuit Court of Appeals explained:

> Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes. Personal jurisdiction, unlike subject-matter jurisdiction, is primarily concerned with fairness to individual parties. Objections to jurisdiction over the person may be waived, either expressly or by not asserting them in a timely manner. A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State.

*Knowlton*, 900 F.2d at 1199 (citing *Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)). The court of appeals additionally observed: "The whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts." *Id.* at 1199. Symrise and CHR. Hansen both have registered agents for

service of process in Iowa. The Eighth Circuit Court of Appeals and other federal courts have exercised general jurisdiction on the basis that a registered corporation consents to jurisdiction, obviating the need for due process analysis. *See Sondergard*, 985 F.2d at 1393 ("[T]his court has presumed that service upon a company's registered agent is sufficient to confer jurisdiction."); *Knowlton*, 900 F.2d at 1199 (holding that "[o]ne of the most solidly established ways of giving such consent [to jurisdiction of a court] is to designate an agent for service of process within the State."); *Bane v. Netlink, Inc*., 925 F.2d 637, 640–41 (3d Cir. 1991) (holding that registration constituted consent to suit on any cause of action); *see also Continental Casualty Co. v. American Home Assurance Co*., 61 F. Supp.2d 128, 129–30 (D. Del. 1999); *Wheeling Corrugating Co. v. Universal Constr. Co., Inc*., 571 F. Supp. 487, 488 (N.D. Ga. 1983); *Sternberg v. O'Neil*, 550 A.2d 1105, 1113 (Del. 1988); *In re FTC Corporate Patterns Report Litig*., 432 F. Supp. 274, 286 (D.D.C. 1977).

The Eighth Circuit Court of Appeals has never overturned, limited, or modified *Knowlton's* holding that consent by registration is a sufficient condition for the exercise of personal jurisdiction, which does not require a due process analysis. *See Steen v. Murray*, 770 F.3d 698, 702 (8th Cir. 2014) (recognizing *Knowlton*). Further, the United States Supreme Court's decisions in *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011) do not *sub silentio* overturn or obviate *Knowlton*. As discussed in more detail below, both cases concern general jurisdiction over a foreign corporation. Neither case contains any meaningful discussion of consent to jurisdiction and neither defendant consented to suit in the forum state. *See Daimler*, 134 S. Ct. at 756; *Goodyear*, 131 S. Ct. at 2856. Accordingly, because Symrise and CHR. Hansen both maintain registered agents for service of process in Iowa, they have consented to jurisdiction here and all reside in Iowa

for the purposes of § 1391(c).[3]  Therefore, the segments of both Symrise and CHR.
Hansen's Motions to Dismiss seeking dismissal for lack of personal jurisdiction are
denied.[4]

### 3.     *Rule 12(b)(2) analysis*

In addressing the two different theories for personal jurisdiction, I must apply the
five-factor test for measuring "minimum contacts" established by the Eighth Circuit Court
of Appeals to determine if due process is satisfied by the exercise of personal jurisdiction.
Specifically, I will consider these five factors and, as instructed, give the first three factors
primary importance:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state; (3) the
> relation of the cause of action to the contacts; (4) the interest
> of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

*Dakota Indus., Inc. v. Dakota Sportswear, Inc*., 946 F.2d 1384, 1390 (8th Cir. 1991); *see
also Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors."); *Coen
v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) ("Factors one through three are primary."); 
*Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("The last two factors are considered

---

[3] Iowa's law governing foreign corporations is almost identical to that of Minnesota
and South Dakota, the state laws at issue in *Knowlton* and *Sondergard*.  Like Minnesota
and South Dakota, Iowa requires foreign corporations that wish to transact business in the
state to acquire a certificate of authority from the secretary of state.  IOWA CODE §
490.1501.  In order to acquire a certificate of authority, a foreign corporation must provide,
among other information, the address of its registered office in Iowa and the name of its
registered agent at that office.  IOWA CODE § 490.1503(e).  Iowa law states that "a
registered agent of a foreign corporation authorized to transact business in this state is the
corporation's agent for service of process, notice, or demand required or permitted by law
to be served on a foreign corporation."  IOWA CODE § 490.1510(1).

[4] Although unnecessary in light of this decision, I will, nonetheless, include both
Symrise and CHR. Hansen, with the other moving defendants, in my minimum contacts
analysis below.

less important and are not determinative.") (citing *Land–O–Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983)).

### a.    General personal jurisdiction

In order for the moving defendants' contacts with the State of Iowa to confer general personal jurisdiction over them, their contacts must be so "'continuous and systematic'" with Iowa, "'[so] as to render them essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2854 (2011)); *see Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *Daimler*, 134 S. Ct. at 754)).  For a corporation, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Id*. at 759 (quoting *Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. at 2854).  "Like specific jurisdiction, general jurisdiction can only be asserted insofar as it is authorized by state law and permitted by the Due Process Clause." *Viasystems, Inc.*, 646 F.3d at 595 (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)).  However, "[b]ecause [general jurisdiction] extends to causes of action unrelated to the defendant's contacts with the forum state, general jurisdiction over a defendant is subject to a higher due-process threshold."  *Id*.

The Spaniers contend that the moving defendants are subject to general personal jurisdiction based on their continuous sale of products to Iowa customers over several years.  The Spaniers' argument, however, is foreclosed by the *Daimler-Goodyear* line of authorities.

In *Goodyear Dunlop Tires Operations*, 131 S. Ct. 2846, two North Carolina teenagers died in a bus accident in France.   *Id*. at 2851.  Attributing the accident to a defective tire manufactured in Turkey at the plant of a foreign subsidiary of the Goodyear Tire and Rubber Company ("Goodyear"), the teenagers' parents brought a wrongful death suit in North Carolina against Goodyear and three foreign subsidiaries incorporated in Luxembourg, Turkey, and France.  *Id*. at 2851–52.  The Supreme Court held that the

foreign subsidiaries lacked an adequate connection to North Carolina for the exercise of general jurisdiction. *Id*. at 2850–51. The Court noted that the foreign subsidiaries:

> are not registered to do business in North Carolina. They have no place of business, employees, or bank accounts in North Carolina. They do not design, manufacture, or advertise their products in North Carolina. And they do not solicit business in North Carolina or themselves sell or ship tires to North Carolina customers.

*Id.* at 2852. The Court also noted that a small fraction of the foreign subsidiaries' tires were distributed in the United States, but those tires were distributed by other Goodyear affiliates. *Id.* The Court concluded that the foreign subsidiaries' connections to North Carolina were so attenuated that they fell "far short of the 'continuous or systematic general business contacts' necessary to empower North Carolina to entertain suit against them on claims unrelated to anything that connects them to the State." *Id*. at 2857 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). The Supreme Court indicated that general jurisdiction exists where contacts with a forum are so continuous and systematic to "render the defendants essentially at home in the forum State." *Id.* at 2851.

Then, three years after its *Goodyear* decision, the Supreme Court decided *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, 22 Argentinian residents filed suit in the Northern District of California against a German manufacturer of luxury vehicles, DaimlerChrysler Aktiengesellscaft ("Daimler"), alleging that Mercedes-Benz Argentina ("MB Argentina"), Daimler's Argentinian subsidiary, collaborated with Argentinian security forces to commit human rights violations during Argentina's "'Dirty War.'" *Daimler*, 134 S. Ct. at 751–52. The plaintiffs asserted that that California courts could exercise jurisdiction over Daimler for "any and all claims," based on Daimler's agency relationship with its "indirect subsidiary," Mercedes–Benz USA, LLC ("MBUSA"). *Id*. at 752. MBUSA, Daimler's exclusive importer and distributor in the United States, was a Delaware limited liability corporation with its principal place of business in New Jersey.

*See id.* at 751–52. MBUSA's annual sales of Daimler vehicles in California generated approximately $4.6 billion in revenues and MBUSA had several corporate facilities in California. *See id.* at 751–52. The Court characterized Daimler's own contacts with California as "sporadic." *Id.* at 758.

Daimler moved to dismiss for want of personal jurisdiction, and the district court granted Daimler's motion. The Ninth Circuit Court of Appeals reversed, finding that Daimler "purposefully and extensively interjected itself into the California market through MBUSA." *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 925 (9th Cir. 2011). In a unanimous holding, the Supreme Court reversed. *Daimler AG*, 134 S. Ct. at 758–62. The Court concluded that "Daimler's slim contacts" with California "hardly" rendered it at home in the forum, even if the Court assumed that MBUSA's contacts could be "imputable to Daimler." *Id.* at 760. The Court refused to "look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" terming such a formulation "unacceptably grasping." *Id.* at 760-61. The Court pointed out that the operative inquiry is "'whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum state.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851) (alteration in original)). The Court further explained that a corporate defendant's "place of incorporation and principal place of business" constitute the paradigm, and seemingly exclusive, bases for finding a corporate defendant "at home." *Id.* at 760. The Supreme Court found that the simplicity of restricting general jurisdiction to these affiliations promoted predictability, by allowing corporations "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," while, at the same time, providing "plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 760–62. Nevertheless, the Court left open the possibility that, in an "exceptional" case, "a corporation's operations in a forum other than its formal

place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761 n.19. However, the Court cautioned that an evaluation of a corporation's operations "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide," since a corporation operating in multiple forums could "scarcely be deemed at home in all of them." *Id.* at 762 n.20.

Applying *Goodyear-Daimler*, it is clear that none of the moving defendants are "essentially at home" in Iowa. None of the moving defendants are Iowa corporations, nor does Iowa serve as their principal place of business. The Spaniers present evidence that all of the moving defendants marketed and sold butter flavorings in Iowa. The Spaniers have not made any showing as to any of the moving defendants' "activities in their entirety." *Id.* at 762 n.20. As a result, the Spaniers offer no evidence or argument to explain why any of the moving defendants' contacts with Iowa are more significant than the contacts they would have with any other state in which they sell their products. Instead, the Spaniers invite me do the very thing *Daimler* forbids: "approv[ing] the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Id*. at 760-61. Moreover, although *Daimler* left open "the possibility" that a foreign corporation's operations, in a forum other than its formal place of incorporation or principal place of business, may, in "an exceptional case," "be so substantial and of such a nature as to render the corporation at home in that State," *id.* at 761 n.19, the contacts, here, clearly do not rise to the level of an "exceptional case" as contemplated by the Supreme Court in *Daimler*. Accordingly, I conclude that this court cannot exercise general personal jurisdiction over any of the moving defendants.

I now turn to consider whether the moving defendants are subject to specific personal jurisdiction in Iowa based on the evidence in the record.

### b. *Specific personal jurisdiction*

"Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586) in turn citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Romak USA, Inc.*, 384 F.3d at 984. More exactly, to subject a defendant to "[s]pecific jurisdiction," the defendant's contacts must "'proximately result from actions by the defendant himself that create a substantial connection with the forum state.'" *Grandstaff*, 56 F. Supp.3d at 1011 (quoting *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) in turn quoting *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003)). "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Id.* at 1011 (citing *Helicopteros*, 466 U.S. at 417).

"[W]hen specific jurisdiction is being alleged, *the quantity of contacts is not determinative*" because a single contact with the forum state can give rise to specific jurisdiction. *AmerUS Group Co. v. Ameris Bancorp*, No. 4:06-cv-00110, 2006 WL 1452808, *9 (S.D. Iowa 2006) (emphasis added); *see also Burger King Corp.*, 471 U.S. at 490 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))). For that reason, when deciding whether specific jurisdiction exists over a defendant, the Eighth Circuit Court of Appeals instructs me to consider "[a]t a minimum . . . the last two of the primary factors—the nature and quality of the contacts, and [their] source and connection to the cause of action." *Coen*, 509 F.3d at 905 (quoting *Lakin*, 348 F.3d at 712).

The United States Supreme Court's decision, *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014), provides guidance in analyzing specific personal jurisdiction. There, a Drug Enforcement Administration (DEA) agent searched and seized $97,000 in cash from the

airline-passenger plaintiffs at an airport in Atlanta, Georgia, before the plaintiffs boarded their connecting flight to Las Vegas, Nevada. *Walden*, 134 S. Ct. at 1119. Although the plaintiffs insisted that the cash was their gambling bank and winnings from San Juan, Puerto Rico, the agent suspected the cash to be affiliated with drug activity and seized the cash. *Id.* After the plaintiffs returned to their residence in Nevada, their cash remained in federal custody. *Id.* Later, the DEA returned the plaintiffs' funds, and the plaintiffs filed a *Bivens* action against the defendant DEA agent in the federal district court in Nevada. *Id.* at 1120. Ultimately, the United States Supreme Court held that the defendant "lack[ed] the 'minimal contacts' with [the forum state] that are a prerequisite to the exercise of [specific personal] jurisdiction over him," despite the defendant's knowledge that his allegedly tortious conduct would delay the return of funds to the plaintiffs who had significant connections with Nevada. *Id.* at 1124 (quoting *Hanson*, 357 U.S. at 251).

In reaching its decision, the Supreme Court explained that "'[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'"" *Id.* at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) in turn quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection with the forum State*." *Id.* (emphasis added). The Supreme Court clarified that the "substantial connection" must arise out of: (1) "contacts that the 'defendant *himself*' creates with the forum State"; and (2) the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 (internal quotations and citations omitted); *see Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (quoting *Walden*, 134 S. Ct. at 1121-22).

### i.     The nature, quality, and quantity of the contacts

In this case, with respect to the nature, quality, and quantity of the contacts by the moving defendants with the forum state, Iowa, I find that each of the moving defendants

has relevant jurisdictional contacts. Each of the moving defendants supplied butter flavoring with diacetyl to popcorn plants in Iowa and this butter flavoring was added to microwave popcorn manufactured at these Iowa plants. Specifically, Givaudan shipped butter flavoring to American Pop Corn's plant in Sioux City, Iowa, and this butter flavoring was added to American Pop Corn's Jolly Time brands of microwave popcorn. Givaudan also shipped butter flavoring to ConAgra's plant in Hamburg, Iowa, and this butter flavoring was added to ConAgra's Act II and Orville Redenbacher brands of microwave popcorn. CHR. Hansen, similarly, shipped butter flavoring to ConAgra's plant in Hamburg, Iowa, and this butter flavoring was added to ConAgra's Act II brands of microwave popcorn. Firmenich supplied butter flavoring to General Mill's plant in Iowa City, Iowa, and this butter flavoring was added to General Mills's Pop Secret brands of microwave popcorn. Likewise, Symrise supplied butter flavoring to General Mill's plants in Cedar Rapids and Iowa City, Iowa, and this butter flavoring was added to General Mills's Pop Secret brands of microwave popcorn. Linda is alleged to have eaten American Pop Corn's Jolly Time, ConAgra's Act II, and General Mills's Pop Secret brands of microwave popcorn containing the moving defendants' butter flavorings, resulting in her injuries.

The moving defendants' shipments of butter flavoring with diacetyl to popcorn plants in Iowa were not single or isolated events. Rather, the moving defendants all made shipments over many years involving hundreds of thousands of pounds of butter flavoring. Symrise supplied butter flavorings from 1991 to 2005 and shipped approximately 800,000 pounds of butter flavoring during that time period. From 1989 to 2005, Givaudan shipped approximately 673,345 pounds of butter flavoring into Iowa. During the period of 1995 to 2004, Firmenich shipped approximately 106,557 pounds of butter flavoring into Iowa. CHR. Hansen also shipped its butter flavoring into Iowa since 1991. These facts permit a reasonable inference that each of the moving defendants purposefully directed its business

activities at Iowa by directly supplying their butter flavoring to microwave popcorn manufacturers in Iowa.

The moving defendants argue that the Spaniers' injuries did not arise out of any activity conducted by them in the State of Iowa. They contend that their only conduct was the sale of butter flavorings to Iowa microwave popcorn manufacturers. The moving defendants' view is myopic. It ignores the fact that, but for their shipments of butter flavoring containing diacetyl into Iowa, the microwave popcorn that allegedly harmed Linda would not have been made in Iowa. The moving defendants sold their butter flavoring containing diacetyl to Iowa microwave popcorn manufacturers knowing that their butter flavoring would be added to microwave popcorn in Iowa. It was this microwave popcorn containing the moving defendants' butter flavoring containing diacetyl which is alleged to have injured Linda. Consequently, as a result of the moving defendants' actions in Iowa, allegedly dangerous products were manufactured in Iowa which harmed Linda. Thus, I find that the Spaniers' cause of action directly arises from or relates to the moving defendants' purposeful contacts with Iowa.

After considering the first three factors, (1) the nature and quality of the moving defendants' contacts with Iowa, which include their directly supplying hundreds of thousands of pounds of butter flavoring with diacetyl to popcorn plants in Iowa, (2) the quantity of those contacts that span many years, and (3) the relationship of the cause of action to those contacts, I conclude that all three factors support a finding that due process is not offended by the exercise of jurisdiction over any of the moving defendants.

### ii. The "secondary factors": Iowa's interest in pAroviding a forum and convenience of the parties

Having considered the first three "primary factors" above (*i.e.*, the nature and quality of the moving defendants' contacts with Iowa; the quantity of the moving defendants' contacts with Iowa; and the relation of the Spaniers' cause of action to the moving defendants' contacts), I turn to consider the two "secondary factors" (*i.e.*, the

interest of Iowa in providing a forum for its residents and the convenience of the parties) for evaluating the propriety of personal jurisdiction under the due process clause. *See K-V Pharm. Co.*, 648 F.3d at 593; *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). Iowa certainly has an interest in providing a forum for its citizens, either individual or corporate. *See Burger King Corp.*, 471 U.S. at 473–74 (noting that "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) (concluding that forum state had an interest in providing a forum for its residents). Here, one of the defendants, American Pop Corn, is an Iowa corporation.

The fifth and final factor, on the other hand, is essentially neutral. This factor—the convenience to the parties—largely balances out wherever the trial is held. A trial in Iowa would be just as inconvenient for each of the moving parties as a trial in New York, and as inconvenient as a trial in each of the moving defendants' home states would be for the Spaniers. Moreover, the United States Supreme Court has recognized that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

### iii.    Conclusion

Thus, after considering all five relevant factors, I conclude that the exercise of specific personal jurisdiction over each of the moving defendants is appropriate under the Iowa long-arm statute and comports with due process. Each of the moving defendants has sufficient minimum contacts with Iowa such that the exercise of personal jurisdiction, here,

would not offend traditional notions of fair play and substantial justice. Therefore, this portion of the moving defendants' Motions to Dismiss are denied.

## B. *Venue*

The moving defendants also argue that this case should be dismissed because venue in this district is improper under 28 U.S.C. § 1391. The Spaniers contend that venue is proper under §§ 1391(b)(1) and 1391(b)(2).

### 1. *Rule 12(b)(3) standards*

Rule 12(b)(3) allows a defendant to challenge venue in a pre-answer motion. *See* Fed. R. Civ. P. 12(b)(3). When reviewing a motion to dismiss for improper venue made pursuant to Rule 12(b)(3), I apply the same standard used for other motions to dismiss. *See Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp.2d 959, 964 (D. Minn. 2010); *Laseraim Tools, Inc. v. SDA Mfg., L.L.C.*, 624 F. Supp.2d 1027, 1033 (D. Ark. 2008); *Transocean Group Holdings Pty Ltd. v. South Dakota Soybean Processors*, 505 F. Supp.2d 573, 575 (D. Minn. 2007). I must construe all facts in the light most favorable to the non-moving party, here the Spaniers, and take the facts alleged in the complaint as true. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *Safco Prods. Co.*, 730 F. Supp.2d at 964; *Laseraim Tools, Inc.*, 624 F. Supp.2d at 1033; *Transocean Group Holdings PTY Ltd.*, 505 F. Supp.2d at 575. The Eighth Circuit Court of Appeals has held that when a defendant seeks dismissal for improper venue, that defendant bears the burden of establishing improper venue. *See United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947); *Safco Prods. Co.*, 730 F. Supp.2d at 964 (citing *Orshek*, 164 F.2d at 742); *Transocean Group Holdings PTY Ltd.*, 505 F. Supp.2d at 575 (same); *Brigdon v. Slater*, 100 F. Supp. 2d 1162, 1164 (W.D. Mo. 2000) (same); *see also Laseraim Tools, Inc. v. SDA*

*Mfg., L.L.C.*, 624 F. Supp.2d at 1033.[5]  However, unlike motions to dismiss under Federal

Rule of Civil Procedure 12(b)(6), when ruling on a motion to dismiss for improper venue,

---

[5] There is a split of authority among the Circuits regarding who bears the burden of proof in a challenge to venue.  *Compare Orshek*, 164 F.2d at 742, and *Myers v. American Dental Ass'n*, 695 F.2d 716, 724-25 (3rd Cir. 1982) (holding that it is defendant's burden) with *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) and *Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979) (holding that it is plaintiff's burden).  In *Myers*, the Third Circuit Court of Appeals determined that the moving party has the burden of establishing that venue is improper.  The court explained that "[b]ecause federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." *Myers*, 695 F.2d at 724.  As a result, in a motion to dismiss for lack of jurisdiction, the plaintiff bears the burden of establishing jurisdiction.  The court observed that venue, unlike jurisdiction, "is not whether the court has authority to hear the case but simply where the case may be tried . . . a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense . . . It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." *Id.*  Although recognizing that other federal courts place the burden on the plaintiff to establish proper venue, the court concluded that "these cases confuse jurisdiction with venue or offer no reasons to support their position."  *Id.*  In contrast, in *Gulf Ins. Co.*, the Second Circuit Court of Appeals assigned the burden of establishing venue in a district to plaintiff, adopting and applying the standard of review for Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction to Rule 12(b)(3) motions to dismiss for improper venue.  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d at 355; *see* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (3d ed. 2004) ("A number of federal courts have concluded that the burden of [proving that venue is improper] is on the defendant, since venue is a 'personal privilege' that can be waived and a lack of venue should be established by the party asserting it.  On the other hand, an equal (perhaps a larger) number of federal courts have imposed the burden on the plaintiff in keeping with the rule applied in the context of subject matter and personal jurisdiction defenses.  The latter view seems correct inasmuch as it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.").  While there may be valid arguments for requiring a plaintiff to establish venue, the Eighth Circuit Court of Appeals's *Orshek* decision is controlling here.  I note that, while several district courts within the Eighth Circuit have placed the burden of establishing venue on the plaintiff, *see Beckley v. Auto Profit Masters, L.L.C.,* 266 F.

the court may consider matters outside the pleadings. *See Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1244 n.5 (11th Cir. 2011); *Doe 1 v. AOL L.L.C.*, 552 F.3d 1077, 1081 (9th Cir. 2009); *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998).

### 2. *Venue analysis*

#### a. *General venue statute*

The general venue statute, 28 U.S.C. § 1391(b), governs in this case because jurisdiction is founded solely on the basis of diversity of citizenship. 28 U.S.C. § 1391(b). Pursuant to § 1391(b), venue is proper under the following circumstances:

> A civil action may be brought in--
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

All of the defendants in this case are corporations. For purposes of the general venue statute, venue is controlled by 28 U.S.C. § 1391(d), which provides:

---

Supp. 2d 1001, 1003 (S.D. Iowa 2003); *Davis v. Advantage Int'l, Inc.*, 818 F. Supp. 1285, 1286 (E.D. Mo. 1993); *Pfeiffer v. International Academy of Biomagnetic Med.*, 521 F. Supp. 1331, 1336 (W.D. Mo 1981), none of these decisions discussed, or even cited, *Orshek*.

For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d).

### b.    Venue in this case

The moving defendants contend that venue is improper under § 1391(b)(1) because not all the defendants are residents of Iowa.  The Spaniers respond that venue is proper under § 1391(b)(1) because all of the defendants are subject to personal jurisdiction in this district, which means they are considered to reside in Iowa.

Under § 1391(b)(1), venue is proper in "a judicial district in which any defendant *resides*, if all defendants are residents of the State in which the district is located. . ."  28 U.S.C. § 1391(b)(1) (emphasis added).  Thus, § 1391(a)(1) permits venue in a judicial district where a single defendant resides so long as that district is within a state in which all defendants are residents.  *See Dashman v. Peter Letterese & Assocs., Inc*., 999 F. Supp. 553, 555 (S.D.N.Y. 1998) (noting that "[t[he language of [§ 1391(b)(1)] contemplates venue in a judicial district within the state in which all defendants reside."); *see also Swanson v. Endres*, No. 07 C 1185, 2007 WL 1655230, at *2 (N.D. Ill. June 6, 2007) (noting that "under [1391(b)(1)] subsection, because both defendants reside in the same state, venue is proper in any district in which either one of the defendants resides."); *Mandic v. Chiocchio*, Nos. L-06161, L-06-162,  2007 WL 101806, at *1 (S.D. Tex. Jan. 8, 2007) ("The proper construction of [§ 1391(a)(1)] is that if all defendants reside in the same State, then venue may lie in that State, in the judicial district where either defendant resides."); *Chavis v. A-1 Limousine*, No. 95 CIV. 9560(LAP), 1998 WL 78290, at *2

(S.D.N.Y. Feb. 24, 1998) (noting that "a corporate defendant 'resides' in any district in which it is subject to personal jurisdiction. Accordingly, if both defendants are subject to personal jurisdiction in New York, they each will be deemed to 'reside' in the 'same state' under [§ 1391(b)(1)]. Under such circumstances, venue will be proper in the Southern District so long as one of those defendants 'resides', i.e., is subject to personal jurisdiction, in the Southern District.").

As noted above, for purposes of determining venue, a corporate defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State. . . ." 28 U.S.C. § 1391(d). In this case, it is uncontested that American Pop Corn resides in the Northern District of Iowa since it is an Iowa corporation with its principal place of business in Sioux City, Iowa. *See Norworthy v. Mystic Transport, Inc*., 430 F. Supp.2d 631, 634 (E.D. Tex. 2006) ("A corporation is a citizen and therefore subject to personal jurisdiction in both its state of incorporation and the state of its principal place of business."); *Cognitronics Imaging Sys. v. Recognition Research Inc*., 83 F. Supp. 2d 689, 693 (E.D. Va. 2000) (finding that the resident corporation with its principal place of business in the jurisdiction would "clearly" be subject to personal jurisdiction); *see also* 28 U.S.C. § 1332(c)(1) ( "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."). Therefore, since American Pop Corn resides in the Northern District of Iowa, venue is proper in this district under § 1391(b)(1) if all of the other defendants are residents of Iowa. Thus, the moving defendants bear the burden of demonstrating that at least one defendant does not reside in Iowa. In other words, the moving defendants must demonstrate that at least one defendant is not subject to personal jurisdiction in Iowa. This they have not done. As discussed above, I have concluded that each of the moving defendants have sufficient minimum contacts with Iowa to exercise personal jurisdiction over them. Moreover, the moving defendants have not demonstrated that any of the other defendants lack sufficient minimum

contacts with Iowa to subject them to personal jurisdiction. Therefore, I find that venue in the United Stated District Court for the Northern District of Iowa is proper pursuant to 28 U.S.C. § 1391(b)(1).[6] Accordingly, this portion of the moving defendants' Motions to Dismiss are denied.

### C.    Indispensible Parties

Finally, Symrise contends that this case should be dismissed because the Spaniers have failed to name an indispensable party, International Flavors & Fragrances ("IFF"), another butter flavoring manufacturer. Specifically, Symrise asserts that IFF's absence may subject it to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Symrise's Br. at 16. The Spaniers argue that Symrise has not established that IFF is an indispensable party to this lawsuit.

#### 1.    Standards for 12(b)(7) motion

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action if plaintiff fails to join an indispensable party under Rule 19.[7] FED. R. CIV. P. 12(b)(7).

---

[6]Having concluded that venue is proper in this district under § 1391(b)(1), it is unnecessary to determine whether venue would also be proper in this district under § 1391(b)(2).

[7]Federal Rule of Civil Procedure 19(a)(1) states:

(1) **Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

Although Rule 12(b)(7) permits dismissal "courts are generally 'reluctant to grant motions to dismiss of this type.'" *Fort Yates Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015) (quoting *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011) (quoting in turn 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (3d ed. 2004*) (*internal quotation marks omitted*)); see Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) ("Dismissal, however, is not the preferred outcome under the Rules."). "The proponent of a motion to dismiss under Fed. R. Civ. P. 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 992 (N.D. Iowa 1995). This burden "can be satisfied by providing 'affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" *Id.* (quoting *Citizen Band Potawatomi Indian Tribe of Ok. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (quoting in turn *Martin v. Local 147, Int'l Bro. of Painters*, 775 F. Supp. 235, 236–37 (N.D. Ill. 1991) (quoting in turn 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Pro., § 1359, at 427 (1990) (internal quotation marks omitted)).

"The purpose of Federal Rule of Civil Procedure 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). A necessary party must be more than just a joint tortfeasor. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (*per curiam*). A party is a necessary party under Rule 19(a) if

---

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

it meets either the requirements under Rule 19(a)(1) or Rule 19(a)(2). *Hood ex rel. Miss. v. City of Memphis, Tenn*., 570 F.3d 625, 628 (5th Cir. 2009); *see Loewen Group Int'l, Inc*., 178 F.R.D. 356, 361 (D.P.R. 1998). Rule 19(a)(1) focuses on whether relief can be afforded the existing parties in the absence of the party in question. On the other hand, Rule 19(a)(2) focuses on the effects the litigation would have on the absent party. *Loewen Group Int'l, Inc*., 178 F.R.D. at 361. "If the court finds that the requirements of Rule 19(a) are satisfied, it may dismiss the action if, in weighing four additional factors specified in Rule 19(b), those factors so indicate."[8] *Id*. "'Whether a person is 'indispensable'—that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation.'" *Spirit Lake Tribe v. North Dakota,* 262

---

[8]Federal Rule of Civil Procedure 19(b) states:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> >
> > (2) the extent to which any prejudice could be lessened or avoided by:
> >
> > > (A) protective provisions in the judgment;
> > >
> > > (B) shaping the relief; or
> > >
> > > (C) other measures;
> >
> > (3) whether a judgment rendered in the person's absence would be adequate; and
> >
> > (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

F.3d 732, 746 (8th Cir. 2001) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968)); *see Fort Yates Sch. Dist. No. 4.*, 786 F.3d at 671-72 ("'Determining whether an entity is an indispensable party is a highly-practical, fact-based endeavor, and [Rule] 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be.'") (quoting *Hood ex rel. Miss.*, 570 F.3d at 628).

### 2.      *Rule 19 analysis*

Other than parroting a portion of Rule 19(a)(1)(B)'s language, Symrise has made no showing that IFF is a required party under that rule. The Spaniers' claims all stem from Linda's alleged respiratory injury resulting from her exposure to popcorn containing butter flavoring containing diacetyl. Symrise has made no showing that IFF supplied butter flavoring containing diacetyl to a microwave popcorn manufacturer or that Linda consumed popcorn made by such a manufacturer. Moreover, each of the Spaniers' claims against the moving defendants arise out of actions taken directly by the moving defendants in supplying the butter flavoring containing diacetyl that was added to the microwave popcorn that Linda consumed. Based on the limited record before me, complete relief among the existing parties can be achieved without the joinder of IFF. Therefore, this portion of Symrise's Motion to Dismiss is also denied.


### III.      CONCLUSION

For the reasons discussed above, I find that Symrise and CHR. Hansen have consented to jurisdiction here. I also find that each of the moving defendants have sufficient contacts with this forum to satisfy due process for this court to exercise specific personal jurisdiction over them. Additionally, I further find that venue in the United Stated District Court for the Northern District of Iowa is proper pursuant to 28 U.S.C. § 1391(a)(1). Finally, I find that the Spaniers have not failed to name an indispensable party. Accordingly, the moving defendants' Motions to Dismiss are denied.

**IT IS SO ORDERED**.

**DATED** this 14th day of April, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA